IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


EDWARD S. MONEY,                  )
                                  )
              Plaintiff,          )
                                  )
vs.                               )          Case No. 06-1348-WEB
                                  )
MICHAEL J. ASTRUE,[1]             )
Commissioner of                   )
Social Security,                  )
                                  )
              Defendant.          )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

3

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  **History of case**

On August 17, 2005, administrative law judge Melvin B.

Werner issued his decision (R. at 14-20).  Plaintiff alleged
disability beginning April 1, 1997 (R. at 14).  However, there
had been an earlier denial of disability on January 15, 1999
which was not reopened by the ALJ (R. at 20).  For purposes of
disability insurance benefits, the ALJ determined that plaintiff
remained insured through March 31, 2002 (R. at 14, 16).  At step
one, the ALJ found that plaintiff had not engaged in substantial
gainful activity since April 1, 1997 (R. at 16).  At step two,
the ALJ found that plaintiff had the following severe
impairments: degenerative disc disease of the lumber spine, and
osteoarthritis (R. at 16).  At step three, the ALJ found that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 17).  After establishing plaintiff's RFC (R. at 17), the
ALJ found at step four that plaintiff could not perform past
relevant work (R. at 18).  At step five, the ALJ found that,
based on vocational expert (VE) testimony, the plaintiff could
perform other jobs in the national economy, including work as a
call out operator, an addresser, and a charge clerk (R. at 19).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 19-20).

## III.  Did the ALJ err in his credibility analysis?

    The framework for the proper analysis of evidence of pain is
that the Commissioner must consider (1) whether claimant
established a pain-producing impairment by objective medical

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987). If an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. For example, an impairment likely to produce some back pain may reasonably be expected to produce severe back pain in a particular claimant. Luna, 834 F.2d at 164. Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone. Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. Luna, 834 F.2d at 165. The absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. When determining the credibility of pain testimony the ALJ should consider the levels of medication and their effectiveness, the

extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  Thompson, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore

explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ's analysis of plaintiff's credibility and claims of pain are set forth below:

> Upon considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. For purposes of this threshold inquiry as to "severity", pain and other symptoms are considered as true without regard to credibility under Luna v. Bowen, 834 F.2d 161 (10 a' Cir. 1987). However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.
>
> The objective medical evidence does not fully support the claimant's subjective complaint of disabling pain. The claimant may have some discomfort due to pain. However, his claim of pain that is disabling is not consistent with the evidence in its entirety and the claimant's activities of daily living. MRIs of the claimant's lumbar spine have shown

minimal disc problems and reject any signs of
stenosis. (Exhibit B-16F-227) An x-ray of the
lumbar spine on February 6, 2004 was within
normal limits. (Exhibit B-6F) The claimant's
pain has been controlled with medications.

The claimant alleges being disabled due to
pain in his lower back which travels to his
legs. He alleges that sitting too long or
standing for long periods of time causes
pain. The claimant stated that lying down at
least two times during the day relieves the
pain. However, the record documents that
physical therapy and medications have given
him relief from the pain. (Exhibits B-3F, 66)
With physical therapy, the claimant's medical
condition has consistently improved. His back
has slowly become stronger, which results in
decreased back pain. (Exhibit B-13F-178) The
claimant is able to leave home without
assistance. He visits with others outside of
the home several hours a week, and attends
church several hours a week. Mr. Money
reported that he is able to shop outside of
the home and attend his children's school
functions. He drives a motor vehicle to run
errands without assistance.

The claimant performs some household chores
such as laundry. (Exhibit B-8E) He reported
that he needs assistance, at times. The
claimant is able to read books and the
newspaper several hours a week. He did not
indicate that he had to read lying down or
reclined due to back pain.

Dr. Henderson reported on February 6, 2004
that the claimant had no history of surgery,
chiropractic management, epidural injections
or the use of a TENS unit. The claimant made
no use of an assistive device. There was no
asymmetrical reflex or motor deficit noted.
The claimant's gait and station were stable.

On March 4, 2004, Jacob Amrani, M.D.,
examined the claimant and opined that the
claimant's symptoms of pain should be managed
with anti-inflammatories and non-narcotic

9

pain medications. (Exhibit B7-100) The doctor
reported that, upon examination, the
claimant's straight leg raising was negative,
bilaterally. The doctor reported that an MRI
of the lumbar spine revealed mild
degenerative changes at L3-4 and L4-5. Dr.
Amrani concluded that the claimant would not
benefit from any type of surgical
intervention, and that he should be managed
with anti-inflammatories and non-narcotic
pain medications.

The undersigned does not give controlling
weight to the opinion of Becky Anderson,
PA-C. Ms. Anderson is not a treating
physician, whose opinion would be entitled to
controlling weight. Her opinion also is not
consistent with the evidence in its
entire[t]y. She gives an opinion that the
claimant can perform less than fulltime work.
(Exhibit B-12F) Objective medical evidence
does not support this opinion.

Pursuant to 96-6p, the Administrative Law
Judge has considered the opinion rendered by
the State agency medical consultants. The
decision rendered here differs from those
opinions. The residual functional capacity
found herein is somewhat more limiting due to
the claimant's ongoing complaints of pain.

(R. at 17-18).

The court finds numerous errors by the ALJ in his

credibility analysis which will require that the case be remanded

for further hearing.  First, the ALJ stated that the MRIs of the

lumbar spine have shown "minimal disc problems and reject any

signs of stenosis" (R. at 17).  The MRI test result referred to

by the ALJ, dated December 15, 2003, indicated the following:

FINDINGS:
THERE IS NORMAL CURVATURE AND ALIGNMENT TO
THE LUMBAR SPINE. VERTEBRAL BODY MARROW

10

SIGNAL IS UNREMARKABLE WITHOUT EVIDENCE OF A
GEOGRAPHIC MARROW LESION.  THERE IS MILD DISC
DESICCATION SEEN AT THE L3-4 AND L4-5 LEVELS,
MOST CONSISTENT WITH MILD DEGENERATIVE DISC
DISEASE. THERE IS ALSO MILD BROAD BASED DISC
BULGING AT THESE LEVELS WITH A SLIGHTLY MORE
PROMINENT MIDLINE DISC PROTRUSION AT THE L4-5
LEVEL. THIS DOES INDENT THE VENTRAL THECAL
SAC. HOWEVER NO SIGNIFICANT CENTRAL SPINAL OR
NEURAL FORAMINAL STENOSIS IS SEEN. ALL OTHER
LEVELS ARE UNREMARKABLE.

IMPRESSION:
L3-4 AND L4-5 DEGENERATIVE DISC DISEASE WITH
BROAD BASED DISC BULGING AS WELL AS A
SLIGHTLY PROMINENT MIDLINE DISC PROTRUSION AT
THE L4-5 LEVEL. NO SIGNIFICANT CENTRAL SPINE
OR NEURAL FORAMINAL STENOSIS IS SEEN.

(R. at 378).  At no point in the MRI report does it indicate that

plaintiff has "minimal" disc problems.  The MRI report does

indicate mild degenerative disc disease with broad based disc

bulging at the L3-4 and L4-5 level, and a slightly prominent

midline disc protrusion at the L4-5 level.  Furthermore, the

report did not "reject any signs of stenosis" (R. at 17) as

claimed by the ALJ.  The report stated that "no significant

central spinal or neural foraminal stenosis is seen" (R. at 378).

The ALJ erred by not accurately reporting the MRI test findings.

Second, the ALJ asserted that the above MRI test result and

an x-ray of February 6, 2004 (R. at 244) do not support

plaintiff's allegations of disabling pain.  However, no medical

opinion in this record indicates that plaintiff's allegations of

disabling pain are not supported by the MRI test or the x-ray.

Furthermore, a physical RFC assessment by Rebecca Anderson, a

11

physician's assistant (PA) who had treated the plaintiff,
indicated that due to her limitations, plaintiff could stand for
at least 2 hours in an 8-hour day and sit for less than 6 hours
in an 8-hour day.  P.A. Anderson stated that plaintiff's
limitations are due to weakness noted in examination on lower
extremities and disc degeneration and central bulge (R. at 290).
P.A. Anderson also opined that plaintiff could never stoop,
crouch, or climb ladders/ropes/scaffolds due to pain, range of
motion, and weakness of her lower extremities (R. at 291).

The ALJ acknowledged that P.A. Anderson's opinion is that
plaintiff can perform less than fulltime work, but rejected the
opinion because "objective medical evidence does not support this
opinion" (R. at 18).  However, the ALJ fails to explain how the
objective medical evidence fails to support the opinions of P.A.
Anderson.  In fact, P.A. Anderson rendered her opinions in light
of her examination of plaintiff's lower extremities, her
evaluation of plaintiff's pain and range of movement, and in
light of the disc degeneration and central bulge which had been
noted in the MRI.[2]

The ALJ does not cite to any medical opinion which indicates
that either the MRI or the x-ray relied on by the ALJ do not

---

[2]Although consulting physician Dr. Henderson offered no
opinions regarding the limitations set forth by P.A. Anderson, he
did confirm limited range of motion of the dorsal and ventral
planes, and diminished sensation in the left lower extremity in
its entirety (R. at 243).

support either plaintiff's claims of disabling pain or the

opinions of P.A. Anderson.[3]  An ALJ is not free to substitute his

own medical opinion for that of a disability claimant's treating

doctors.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir.

2004).  The ALJ is not entitled to *sua sponte* render a medical

judgment without some type of support for his determination.  The

ALJ's duty is to weigh conflicting evidence and make disability

determinations; he is not in a position to render a medical

judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan.

2002).  In the absence of any reference by the ALJ to medical

---

[3]In his brief, the defendant refers to a December 10, 2001
medical report by Dr. Jones that plaintiff not engage in
prolonged crawling, stooping, running, walking or standing and a
weight limitation of 25 pounds (R. at 209), and a December 2,
2002 medical report by Dr. Jones that plaintiff not sit for over
1 hour without being allowed to walk and stretch for 5-7 minutes
and no standing in one location for over 1 hour, no overhead work
on consistent basis, no lifting over 25 pounds, and no prolonged
stooping, crawling, running, walking or standing (R. at 176)
(Doc. 10 at 12).  However, none of the medical records of Dr.
Jones were mentioned by the ALJ in his decision.  An ALJ's
decision should be evaluated based solely on the reasons stated
in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir. 2004).  A decision cannot be affirmed on the basis of
appellate counsel's post hoc rationalizations for agency action.
Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A
reviewing court may not create post-hoc rationalizations to
explain the Commissioner's treatment of evidence when that
treatment is not apparent from the Commissioner's decision.
Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By
considering legal or evidentiary matters not considered by the
ALJ, a court risks violating the general rule against post hoc
justification of administrative action.  Allen v. Barnhart, 357
F.3d 1140, 1145 (10th Cir. 2004).  Because these medical records
were not discussed by the ALJ in his decision, they will not be
considered by the court.

evidence to support his assertion that the opinions of P.A.
Anderson are inconsistent with the MRI test or the x-ray, the ALJ
overstepped his bounds into the province of medicine.  Miller v.
Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Third, the ALJ discounted plaintiff's allegations of pain
because the medical records showed that physical therapy and
medications have given plaintiff relief from pain (R. at 17-18).
However, the ALJ did not cite to any medical source who provided
an opinion that the fact that physical therapy and medications
have given plaintiff relief from pain negated the opinions of
P.A. Anderson, whose limitations are consistent with plaintiff's
claims of disabling pain.  See Shontos v. Barnhart, 328 F.3d 418,
416-427 (8th Cir. 2003)("No medical source provided an opinion
that the fact that Ms. Shontos did better while taking prescribed
medication negated Dr. Burn's opinion that Ms. Shontos would have
difficulty with detailed instructions").

Fourth, the ALJ discounted plaintiff's allegations of pain
because plaintiff's pain has been controlled with medications (R.
at 17), and further relied on the report of Dr. Henderson that
plaintiff did not require epidural injections or the use of a
TENS unit (R. at 18).  At the hearing, plaintiff testified that
she has taken Ultram, Ultracets, Dolobid, Flexeril, Lortabs and
lidocaine patches for pain (R. at 406).  Plaintiff indicates that
Lortabs were medications of last resort because they make her

dizzy and light-headed (R. at 407).  With the use of pain
medications, including the patch, plaintiff testified that her
pain level never goes below a 6 on a 0-10 scale (R. at 403-404,
408).  One of the specific factors that the ALJ is required to
consider when assessing plaintiff's credibility is to consider
the medications that plaintiff is taking to alleviate pain and
also to consider their side effects.  20 C.F.R. § 1529(c)(3)(iv);
SSR 96-7p, 1996 WL 374186 at *3.  The ALJ did not mention the use
of some of plaintiff's medications, including Lortab, or the side
effects of those medications.  The medical records of P.A.
Anderson indicate 30 Lortabs were prescribed for moderate to
severe pain on September 21, 2004 (R. at 270).  Given the side
effects of Lortab testified to by the plaintiff, the ALJ should
have considered plaintiff's testimony on this point when weighing
plaintiff's credibility.

**IV.  Are the ALJ's RFC findings supported by substantial
evidence?**

     When this case is remanded, the ALJ will be required to make
new RFC findings after undertaking a proper analysis of
plaintiff's credibility based on all the evidence, including the
opinions of P.A. Anderson and the side effects of plaintiff's
medication.  Because this case is being remanded for the reasons
set forth above, the court will mention one issue that should be
addressed when the case is remanded even though it was not

specifically raised by the parties.  This issue should be addressed when the case is remanded in order to insure that a proper decision is made.

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.

16

Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

In his decision, the ALJ did not include a narrative discussion describing how the evidence supported each conclusion, as required by SSR 96-8p.  The ALJ rejected the RFC opinions expressed by P.A. Anderson, and made RFC findings "somewhat more limiting" than those expressed by the state agency medical consultants (R. at 18).  However, the ALJ failed to indicate what medical or other evidence he relied on in making his RFC findings.  Therefore, on remand, the ALJ shall provide the narrative discussion required by SSR 96-8p when making his RFC findings.  The ALJ should also make a determination of whether the record is sufficient to permit him to make RFC findings; if not additional medical evidence should be obtained.  Fleetwood v.

<u>Barnhart</u>, 211 Fed. Appx. 736, 740-741 (10th Cir. Jan. 4, 2007).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 2, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge